**FILED**
Mar 12 2021
4:20 pm
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY     s/ meganb     DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

November 2019 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JEAN-FRANCOIS EAP (1), <br> aka "888888", <br> THOMAS HERDMAN (2), <br><br> Defendants. | Case No. '21 CR822 GPC <br><br> **I N D I C T M E N T** <br><br> Title 18, U.S.C., Sec. 1962(d) — **Racketeering Conspiracy to Conduct Enterprise Affairs (RICO Conspiracy)**; Title 21, U.S.C., Secs. 841(a)(1) and 846 – **Conspiracy to Distribute Controlled Substances**; Title 18, U.S.C. Sec. 2 – **Aiding and Abetting**; Title 18, U.S.C., Sec. 1963, and Title 21, U.S.C., Sec. 853 – **Criminal Forfeiture** |

The grand jury charges at all times material to this Indictment:

## SKY GLOBAL OVERVIEW

1. SKY GLOBAL is a Canadian-based company that sells encryption services and devices to transnational criminal organizations to facilitate illegal activity. JEAN-FRANCOIS EAP and others started SKY GLOBAL in approximately 2010. SKY GLOBAL's devices are specifically designed to prevent law enforcement from actively monitoring the communications between members of transnational criminal organizations. As part of its services, SKY GLOBAL guarantees that messages stored on its devices can be (and will be) remotely deleted by the company if the device is seized by law enforcement or otherwise compromised.

2. SKY GLOBAL devices are dedicated data devices housed inside an iPhone, Google Pixel, Blackberry, or Nokia handset. Whereas the standard iPhone, Google Pixel, Blackberry, or handset is sold to the public with the capability for voice communication, GPS

MEH:JCM:nlv(2):San Diego:3/12/21

navigation, camera, Internet access, and the Messenger services, when SKY GLOBAL receives the devices, their technical team removes the internal hardware/software responsible for the GPS, camera, Internet, and voice communications. SKY GLOBAL then installs sophisticated encryption software and routes the data through encrypted servers located in Canada and France. There are at least 70,000 SKY GLOBAL devices in use worldwide, including in the United States. For more than a decade, SKY GLOBAL has generated hundreds of millions of dollars in profit by facilitating the criminal activity of transnational criminal organizations and protecting these organization from law enforcement.

**The Defendants**

3. JEAN-FRANCOIS EAP, aka "888888", ("EAP") is a citizen of Canada and resident of Vancouver, Canada. He is the founder and CEO of SKY GLOBAL. He controlled SKY GLOBAL operations as set forth below, including frequent communication with Distributors, including co-defendant THOMAS HERDMAN, ("HERDMAN") and others.

4. THOMAS HERDMAN, ("HERDMAN") is a citizen of Canada, and a resident of Vancouver, Canada. Until approximately December 2020, HERDMAN was responsible for international distribution of SKY GLOBAL devices, including distribution in the United States (including Southern California), Mexico, Central America, South America, Europe, and Australia.

**The Enterprise**

5. Defendants EAP and HERDMAN, and others, were leaders, members, and associates of a criminal organization, hereinafter, the SKY GLOBAL ENTERPRISE, whose members engaged in acts involving drug trafficking and obstruction of justice. Leaders, members and associates of SKY GLOBAL ENTERPRISE operated throughout the world, including Canada, Colombia, Mexico, Belgium, the Netherlands, Australia, and throughout the United States, including in the Southern District of California.

6. SKY GLOBAL ENTERPRISE, including its leadership, members, and associates, constituted an "enterprise," as defined in Title 18, United States Code,

Section 1961(4), that is, a group of individuals associated in fact, although not a legal entity. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The enterprise was engaged in, and its activities affected, interstate and foreign commerce.

7. Leaders, members, and associates of SKY GLOBAL ENTERPRISE had defined roles in the enterprise. At all times relevant to this Indictment, defendant EAP and HERDMAN, and others, participated in the operation and management of the enterprise as follows:

**Administrators:**

8. Administrators are SKY GLOBAL ENTERPRISE's front office staff who have physical control of the SKY GLOBAL ENTERPRISE's network and can initiate new subscriptions, remove accounts, remotely delete (i.e, wipe), and reset devices. EAP, as the Chief Executive Officer, is the key administrator.

**Distributors:**

9. Distributors coordinate agents and resellers of SKY GLOBAL ENTERPRISE devices, receive payments for ongoing subscription fees, send associated funds (minus personal profit) back to the parent company, and provide second level technical support. The distributors can also remotely delete and reset devices. The distributors communicate directly with SKY GLOBAL ENTERPRISE's administrators. HERDMAN was a distributor for SKY GLOBAL ENTERPRISE up until approximately December 2020. HERDMAN and EAP communicated directly in furtherance of the SKY GLOBAL ENTERPRISE.

**Agents:**

10. Agents physically source and engage with new customers to sell and deliver devices with initial subscriptions. The agents earn profit on the sale of the handset only and provide first-level technical support to their small group of customers.

**Purposes of the Enterprise**

11. SKY GLOBAL ENTERPRISE's purposes included the following:

3

A. To create, maintain, and control a method of secure communication to facilitate the importation, exportation, and distribution of illegal drugs into Australia, Asia, Europe, and North America, including the United States and Canada, and to launder the proceeds of such drug trafficking conduct;

B. To obstruct investigations of drug trafficking and money laundering organizations by creating, maintaining, and controlling a system whereby SKY GLOBAL would remotely delete evidence of such activities;

C. To enrich the leaders, members, and associates of the enterprise by taking payment from the sale of each SKY GLOBAL device;

D. To promote and enhance the reputation and standing of SKY GLOBAL and its leaders, members, and associates;

E. To preserve and protect SKY GLOBAL's profits and client base through acts of money laundering;

F. To protect SKY GLOBAL and its leaders, members, and associates from detection, apprehension, and prosecution by law enforcement;

G. To avoid detection of its illicit conduct by, among other things, laundering its illegal proceeds, communicating with encrypted devices, and transferring illegally obtained funds into cryptocurrency, specifically Bitcoin;

H. To evade law enforcement by, among other things, maintaining the organization's technical infrastructure outside United States; and

I. To enhance its power and financial profits by promoting SKY GLOBAL's activities with customers and potential customers.

**Manner and Means of the Enterprise**

12. The means and methods by which the defendants, and other members and associates of SKY GLOBAL, agreed to conduct and participate in the affairs of the enterprise included, by were not limited to, the following:

A. SKY GLOBAL Administrators operated the SKY GLOBAL NETWORK, which used SKY GLOBAL devices to send and receive encrypted messages. To stay outside

4

the reach of law enforcement of the United States, SKY GLOBAL maintained its servers in Canada and France, and used proxy servers to further disguise the physical locations of its servers.

      B.    SKY GLOBAL Distributors and Agents provided SKY GLOBAL devices to their clients and collected a subscription fee of approximately $1,200 – $2,000 USD per six month period.

      C.    SKY GLOBAL's Administrators, Distributors, and Agents employed an "ask nothing/do nothing" approach toward its clients. SKY GLOBAL adopted this approach shortly after the takedown of Phantom Secure and allowed for its Administrators, Distributors, and Agents to have plausible deniability from the activities of their clients that they knew or had reason to know participated in illegal activities, including international drug trafficking.

      D.    SKY GLOBAL Administrators, Distributors, Agents, and clients strove to achieve shared anonymity, in order to evade law enforcement and escape the other consequence of their criminal activities. To that end, SKY GLOBAL's Administrators, Distributors, Agents, and clients remained anonymous even to each other. SKY GLOBAL Administrators, Distributors, and Agents do not request, track or record their clients' real names, and interacted only via username, email handles, or nicknames.

      E.    SKY GLOBAL Administrators, Distributors, Agents, and clients distributed and facilitated the distribution of federally controlled substances, including heroin, cocaine, and methamphetamine, using SKY GLOBAL devices.

      F.    SKY GLOBAL Administrators, Distributors, and Agents obstructed law enforcement by deleting (i.e. wiping) devices that they were made aware had been seized by law enforcement to destroy evidence that the devices contained. SKY GLOBAL Administrators, Distributors, and Agents also suspended service and deleted the contents of a device if SKY GLOBAL suspected law enforcement or an informant was using the device as part of an investigation.

G. SKY GLOBAL Administrators, Distributors, and Agents facilitated the illegal activities of its clients, including drug trafficking and money laundering;

H. SKY GLOBAL Administrators, Distributors, and Agents used digital currencies, including Bitcoin, to facilitate illegal transactions on the website, to protect the membership's anonymity, and to facilitate the laundering of the membership's ill-gotten gains. SKY GLOBAL Administrators, Distributors, and Agents also set up and maintained shell companies to hide the proceeds generated by selling its encryption services and devices.

## Count 1

### (RACKETEERING CONSPIRACY)

13. Paragraphs 1 through 12 are re-alleged and incorporated by reference herein.

14. Beginning at least as early as 2010 and continuing up to and including March 12, 2021, within the Southern District of California and elsewhere, defendants JEAN-FRANCOIS EAP, aka "888888", THOMAS HERDMAN, and others, being persons employed by and associated with SKY GLOBAL, an enterprise which was engaged in, and the activities of which affected interstate and foreign commerce, did knowingly and intentionally conspire with each other, and with others, to violate Title 18, United States Code, Section 1962(c), that is to conduct and participate, directly and indirectly, in the conduct of SKY GLOBAL's affairs through a pattern of racketeering activity consisting of:

A. Multiple offenses involving trafficking in controlled substances in violation of Title 21, United States Code, Sections 841(a)(1), 846, 952, 960, and 963;

B. Multiple acts indictable under Title 18, United States Code, Section 1512 (obstruction of justice).

15. It was a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the SKY GLOBAL ENTERPRISE.

All in violation of Title 18, United States Code, Section 1962(d).

//
//

6

## Count 2

### (Conspiracy to Distribute Illegal Drugs and Aiding and Abetting)

16. Beginning as early as 2010 and continuing up to and including March 12, 2021, within the Southern District of California and elsewhere, defendants JEAN-FRANCOIS EAP, aka "888888", and THOMAS HERDMAN, did knowingly and intentionally conspire with each other and others to aid and abet the distribution of at least 5 kilograms and more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance; in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 2.

### Forfeiture Allegations

### (RACKETEERING CONSPIRACY FORFEITURE)

17. The allegations contained in Paragraphs 1 through 15 are re-alleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America under Title 18, United States Code, Section 1963.

18. Upon conviction of the violation of Title 18, United States Code, Section 1962, as alleged in Count 1, defendants JEAN-FRANCOIS EAP, aka "888888", and THOMAS HERDMAN, shall forfeit to the United States:

   A. all interests acquired and maintained in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(1);

   B. all interests in, security of, claims against, and property and contractual rights affording a source of influence, over SKY GLOBAL, which these defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(2); and

   C. all property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code,

Section 1962, which property is subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(3).

19. The interests of said defendants subject to forfeiture to the United States under Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to at least $100,000,000 and all interests and proceeds traceable thereto, including but not limited to the following assets:

A. All right, title, and interest in the following Blackberry Unified Endpoint Management (UEM), Server Routing Protocol Identifiers (SRPIDs):

```
S49231435
S57849247
S39136777
S12077336
S63359470
S80608512
S34223055
```

B. All right, title, and interest in the following Google Android for Work Enterprise Account:

Enterprise Name: Sky Global Holdings, Inc.
Enterprise Android for Work Admin: developer@skyglobal.com
Enterprise ID: LC00xosx2o
Enterprise Mobility Management (EMM): Blackberry

C. All right, title, and interest in at least 40 SKY GLOBAL HOLDINGS domain names:

www.skyglobal.com
www.skyecconline.com
www.skyecc.com
www.skysecure.com
www.skysecure.us
www.skychat.info
www.skywork.com
www.skywork.net
www.skychat.net
www.skysecure.cc
www.skysecure.info
www.skysecure.mobi
www.skysecure.co
www.skysecure.me
www.skysecure.org

```
www.skyglobal.org
www.skyglobal.co
www.skyglobal.ca
www.skyecc.mobi
www.skyuem.com
www.skychat.mobi
www.sky.global
www.skywork.mobi
www.skywork.online
www.skychat.biz
sky.skysecure.im
ios.skysecure.im
iosa.skysecure.im
iosb.skysecure.im
skya.skysecure.im
skyb.skysecure.im
sky3.skysecure.im
ns.skysecure.im
smtp.skysecure.im
dev.skysecure.im
hermes.skysecure.im
mx.skysecure.im
mx2.skysecure.im
im.skysecure.im
nox.skysecure.im
```

## (DRUG CONSPIRACY FORFEITURE)

20. The allegations contained in Paragraph 16 are re-alleged and by their reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America under Title 21, United States Code, Section 853.

21. Upon conviction of the felony violation of Title 21, United States Code, Sections 841(a)(1) and 846, as alleged in Count 2, which offense is subject to imprisonment for more than one year, defendants JEAN-FRANCOIS EAP, aka "888888", and THOMAS HERDMAN, shall forfeit to the United States all property constituting or derived from any proceeds the defendants obtained, directly or indirectly, as a result of the violation, and any of the defendants' property(ies) used or intended to be used, in any manner or part, to commit or to facilitate the commission of the violation set forth in Count 2.

//

## Substitute Property Forfeiture

22. If any of the above-described forfeitable property, as a result of any act or omission of said defendants —

    A.    cannot be located upon the exercise of due diligence;

    B.    has been transferred or sold to, or deposited with, a third party;

    C.    has been placed beyond the jurisdiction of the Court;

    D.    has been substantially diminished in value; or

    E.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m) and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the property listed above as being subject to forfeiture.

All pursuant to Title 18, United States Code, Section 1963, and Title 21, United States Code, Section 853.

DATED: March 12, 2021.

A TRUE BILL:

████████████

Foreperson

RANDY S. GROSSMAN
Acting United States Attorney

By: _____
MEGHAN E. HEESCH
JOSHUA C. MELLOR
Assistant U.S. Attorneys